UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK





---

ARISTA RECORDS LLC, ATLANTIC RECORDING
CORPORATION, CAPITOL RECORDS, INC.,
ELEKTRA ENTERTAINMENT GROUP INC.,
SONY BMG MUSIC ENTERTAINMENT, and
UMG RECORDINGS, INC.,

                        Plaintiffs,

              v.

METAMACHINE, INC., SAM YAGAN,
and JED MCCALEB,

                        Defendants.

Civil Action No.:

COMPLAINT

## NATURE OF THE CASE

1.      Plaintiffs, some of the most prominent record companies in the United States,
bring this civil action for inducement of copyright infringement, contributory copyright
infringement, and vicarious copyright infringement against Defendants for their ownership,
operation, and/or control of a "peer-to-peer" file trading system known as "eDonkey," "eDonkey
2000," and "Overnet."

2.      The theft of copyrighted music on the Internet has reached epidemic proportions.
Defendants are at the forefront of this problem.  Defendants built, maintain, and/or control a
computer system and software, marketed under the brand names "eDonkey," "eDonkey 2000,"
and "Overnet," which Defendants designed and operate knowingly, willfully and intentionally to
facilitate infringement of millions of Plaintiffs' copyrighted sound recordings.

3.      Massive copyright infringement is the very purpose of the eDonkey, eDonkey
2000, and Overnet system and software.  Defendants know it; they encourage and contribute to

it; and they readily could prevent it – but choose not to.  They choose not to because they profit handsomely from the copyright infringement on their system.  Simply put, Defendants need their users to engage in massive copyright infringement in order to maintain the value of their system. Without widespread infringement of the most popular copyrighted sound recordings, users would not be drawn to the Defendants' system, advertising and other revenues would disappear, and Defendants' business and their system would not survive.

4.      Defendants' conduct has caused Plaintiffs irreparable harm.  Plaintiffs seek damages and a preliminary and permanent injunction to prevent further infringement of Plaintiffs' copyrighted recordings.

## JURISDICTION AND VENUE

5.      This is a civil action for damages and injunctive relief for copyright infringement under the Copyright Act (17 U.S.C. § 101 *et seq.*).

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Defendants in that Defendants are doing business in New York and in this District, and a substantial part of the acts of infringement complained of herein occurred in New York and this District.  Moreover, Defendants were aware, or should have been aware, that their conduct would cause injury in New York and to residents of New York.

8.      Defendants regularly do or solicit business or engage in a persistent course of conduct in New York and in this District.  Upon information and belief, Defendants currently maintain or have in the past maintained an office in New York and in this District.  Further, Defendants have directed electronic activity into New York with the manifest intent of doing

business here, including, but not limited to, by selling and distributing the eDonkey Software to New York residents.

9.      Defendants also have facilitated and encouraged the infringement of Plaintiffs' copyrighted sound recordings in New York by users residing in New York.  Defendants sell and distribute the eDonkey Software, which encourages and enables New York residents to download illegal copies of Plaintiffs' copyrighted sound recordings.  In support of that software, Defendants operate several websites and computer servers, and provide technical support and upgrades to paying customers, many of them in New York.  Defendants, moreover, have caused harm to Plaintiffs in New York, where many of the Plaintiffs reside, and where potential purchasers of Plaintiffs' copyrighted sound recordings are thereby diverted from legitimate transactions.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) in that a substantial part of the acts of infringement complained of herein occurred in New York and in this District, and Defendants are doing business in New York and this District.

## PLAINTIFFS AND PLAINTIFFS' RECORDINGS

11.     Plaintiffs Arista Records LLC, Atlantic Recording Corporation, Capitol Records, Inc., Elektra Entertainment Group Inc., Sony BMG Music Entertainment, and UMG Recordings, Inc., are among the most well-known and respected record companies in the United States and the world.  They and/or their subsidiaries are in the business of producing, manufacturing, distributing, selling, and licensing the distribution and sale of sound recordings in the United States.

12.     Plaintiffs and/or their subsidiaries are the copyright owners or owners of exclusive rights under copyright with respect to the vast majority of copyrighted sound recordings sold in the United States, including those listed in Exhibit A.

13.     Plaintiffs have invested and continue to invest substantial sums of money, as well as time, effort, and creative talent, to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and license sound recordings embodying the performances of their exclusive recording artists.  Plaintiffs, their recording artists, and others in the music industry are compensated for their creative efforts and monetary investments largely from the sale and distribution of their sound recordings to the public, and from other exploitation of such sound recordings, including the licensing of sound recordings for online sale and distribution by others.

14.     Plaintiffs have invested and continue to invest substantial sums of money to develop a legitimate online market for digital music directly or through licensees.  Plaintiffs are actively engaged in marketing and selling online digital copies of copyrighted recordings to members of the public.


## **DEFENDANTS**

15.     MetaMachine, Inc., is the owner and/or operator of the eDonkey System and Software.  MetaMachine, Inc. is a New York corporation, and, upon information and belief, it maintains or has maintained offices located in New York.

16.     Sam Yagan is an officer of MetaMachine, Inc., and a developer, and/or operator of the eDonkey System and Software.

17.     Jed McCaleb is an officer of MetaMachine, Inc., and a developer and/or operator of the eDonkey System and Software.

18.     Defendants, individually and/or jointly, have owned, operated, and controlled the eDonkey System and Software (as defined in Paragraph 23 below), and have been responsible for creating, distributing, and marketing the eDonkey Software (as defined in Paragraph 23 below), operating several computer servers and websites, including the "eDonkey2000.com," "eDonkey.com," and "overnet.com" websites, providing technical support to eDonkey customers, and other activities.

## "PEER-TO-PEER FILE SHARING SYSTEMS" AND ONLINE MUSIC PIRACY

19.     The Internet offers tremendous opportunities for the music business as well as for everyone who loves music.  Indeed, the Internet provides distinct advantages for music because, unlike tangible products, it is possible not only to market and sell music online, but also to deliver it to the consumer digitally and instantly over the Internet.  Legitimate avenues for online digital music exist through authorized and licensed websites, such as Apple iTunes, Rhapsody, AOL Music, and many others.  These legitimate outlets for online music are licensed and/or operated by the Plaintiffs and fill the need of consumers who want digital music online but do not want to break the law to obtain it.

20.     Along with opportunities for new and creative legitimate music-related businesses, the Internet has also afforded opportunities for the wide-scale piracy of sound recordings.  In particular, Defendants have created systems that facilitate the unlawful copying and distribution of infringing digital music files by individual users through a process that is sometimes called "peer-to-peer file sharing."  However, these so-called "file sharing" systems do little more than facilitate the widespread theft of valuable intellectual property.

21.     The most notorious example of a "peer-to-peer file sharing" system was Napster, which was shut down after the Ninth Circuit affirmed a preliminary injunction finding that

Napster had engaged in contributory and vicarious copyright infringement based on the knowing facilitation of massive infringement by its users. *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). Recently, the Supreme Court held, in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764 (2005), that operators of "peer-to-peer file sharing" systems – like Defendants – are secondarily liable where they actively induce direct copyright infringement by their users.

22.     On a "peer-to-peer file sharing" network, the actual exchange of files — *i.e.*, the actual downloading and uploading — takes place directly between users (or peers) of the network.  However, users need a way to find the copyrighted music and other content they seek and to easily connect with other downloaders and uploaders.  Defendants' software and services, like Napster and similar systems, enables and encourages the uploading and downloading between users and acts as a clearinghouse of infringing works, thereby encouraging and inducing massive direct copyright infringement.

## THE INFRINGING EDONKEY SYSTEM AND SOFTWARE

23.     Defendants have induced and facilitated direct infringement through their distribution and sale of proprietary software under the names "eDonkey," "eDonkey Pro," and "eDonkey 2000," "Overnet," and "dserver" (the "eDonkey Software"), their operation of computer servers and websites known as "eDonkey2000.com," "eDonkey.com," and "overnet.com," and other activities that materially contribute to direct copyright infringement. The eDonkey Software enables users to connect to and use computer networks to reproduce and distribute digital files utilizing the peer-to-peer networks known as "eDonkey," "eDonkey 2000," and "Overnet" (the foregoing shall be referred to herein as the "eDonkey System and Software"). The eDonkey Software client is available via online download from Defendants' websites.

24.     Users download and install the eDonkey Software client onto their individual computers.  Individuals then use the eDonkey Software to search for music files they desire. Users type search queries into a search field in the eDonkey Software to initiate a search of the system for files that match the search criteria.  Information about the files being offered by all users is aggregated in an index or in multiple indices within the eDonkey System.  The search is propagated through the System (with the index or indices being searched) and information about matching files is returned to the requesting user.

25.     When a user identifies a file to download, the user clicks on the file and the eDonkey Software automatically establishes a user-to-user connection between the user requesting the file and other users hosting the file.  The file then automatically begins to download from the computers of the hosting users to the computer of the requesting user.  At the completion of the download, the requesting user has an exact copy of the file.  A download in this fashion leaves the copies on the host users' computers intact and makes a reproduction – a complete copy – of the file on the requesting user's computer.  In the normal course, the newly-downloaded copy of the file on the requesting user's computer is automatically and immediately offered for further distribution to all other users.  Thus, files are distributed virally across the network.

26.     On its face, the overwhelming use of the eDonkey System and Software is copyright infringement.  Indeed, the use of the eDonkey System and Software is so overwhelmingly devoted to the illegal infringement of Plaintiffs' copyrighted sound recordings that no substantial non-infringing use of eDonkey can be said to exist.

27.     Defendants derive revenues from the eDonkey System and Software in two ways. First, from the direct sale of "eDonkey Pro" software to users, and second, from advertising

software bundled with the eDonkey Software.  Both of these revenue sources depend on attracting customers to the eDonkey System and Software, which in turns depends upon the draw of "free" – but unlawful – copyrighted content.

28.     Through the eDonkey System and Software, for profit and other commercial gain, Defendants have induced, caused and materially contributed to the distribution and copying of copyrighted sound recordings, by some of Plaintiffs' and/or their subsidiaries' or affiliates' most famous artists – including those works listed in Exhibit A.  Defendants use the availability of the most popular copyrighted works to attract users to their system, and those users bring with them still more copies of popular copyrighted works.  Defendants' business is predicated upon advertising and other revenue streams that critically depend upon Defendants being able to attract a large number of users to their system.  Defendants thus encourage, facilitate and induce individuals to use the eDonkey System and Software to violate Plaintiffs' copyrights, while simultaneously profiting from such activity.

29.     Defendants have the right and ability to control the use to which the eDonkey System and Software is put.  By the same token, Defendants have the ability to block, or "filter," access to certain files – such as Plaintiffs' copyrighted works.  Defendants have the ability to stop the massive infringement made possible via the eDonkey System and Software, but have chosen not to do so.

## COUNT I

### (Copyright Infringement)

30.     Plaintiffs incorporate by this reference paragraphs 1 through 29 as if set forth herein.

8

31.     Defendants are liable under the Copyright Act for inducing the infringing acts of eDonkey users.  Defendants distribute the eDonkey Software, and operate and maintain computer servers and websites, with the object of promoting their use to infringe Plaintiffs' copyrighted sound recordings.  Individuals use the eDonkey System and Software to illegally upload and download Plaintiffs' copyrighted works, including but not limited to the sound recordings listed in Exhibit A.  The direct copyright infringement made possible and encouraged by Defendants is widespread and constitutes the overwhelming use of the eDonkey System and Software.  Through their distribution of the eDonkey Software and their operation of websites, computer servers, and provision of technical support to assist that software, Defendants knowingly induce the unauthorized reproduction and distribution of copyrighted sound recordings, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.  17 U.S.C. § 106.

32.     Independently, Defendants are liable as contributory copyright infringers for the infringing acts of users of the eDonkey Software and System.  Each and every one of those user infringements is encouraged, made possible and facilitated by the eDonkey Software and System.

33.     Defendants have actual and constructive knowledge of the infringing activity that takes place by users of the eDonkey Software and System.  Indeed, Defendants know that their software is used predominantly and overwhelmingly to infringe Plaintiffs' copyrights.

34.     With full knowledge, Defendants cause and materially contribute to their users' copyright infringement by, among other things, providing their users with the software needed to connect to computer networks on which unauthorized copies of Plaintiffs' copyrighted sound

recordings, including those listed on Exhibit A hereto, are exchanged, and providing support and maintenance for their software and their users' infringements.

35.     Independently, Defendants are vicariously liable for the infringing acts of their eDonkey users.  At all relevant times, Defendants have had the ability to modify the eDonkey System and Software to prevent its users from unlawfully downloading or distributing copyrighted sound recordings.  Despite their right and ability to do so, Defendants have failed to take any action to prevent or mitigate the infringing activity occurring on their system.

36.     At the same time, Defendants have derived, and continue to derive, substantial financial benefit directly attributable to the infringement of Plaintiffs' copyrights by eDonkey users.  Defendants derive revenue from the sale of software and from advertising software bundled with the eDonkey software.  Both the profitability of the eDonkey Software itself, and its profitability as an advertising platform, turn on drawing additional users that are attracted by the eDonkey Software and System's ability to provide them with unauthorized copies of Plaintiffs' copyrighted recordings, including those listed on Exhibit A hereto.

37.     The acts of Defendants complained of herein constitute infringement of Plaintiffs' registered copyrights and exclusive rights under copyright, in violation of 17 U.S.C. §§ 106 and 501.

38.     The infringement of Plaintiffs' rights in and to each copyrighted recording constitutes a separate and distinct act of infringement.

39.     The foregoing acts of infringement have been willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiffs.

40.     As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs have been injured and are entitled to

the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with

respect to each sound recording infringed, or such other amounts as may be proper under 17

U.S.C. § 504(c).  Alternatively, Plaintiffs, at their election, are entitled to damages pursuant to 17

U.S.C. § 504(b) for each separate infringement.

   41. Plaintiffs further are entitled to their costs in pursuing this action, including

reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

   42. Defendants' conduct, as hereinabove averred, has caused and, unless enjoined by

this Court, threatens to continue to cause Plaintiffs great and irreparable injury that cannot fully

be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to

17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting

further infringement of Plaintiffs' copyrights and exclusive rights under copyright.


   WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them,

jointly and severally, as follows:

   1. For statutory damages in an amount not less than $150,000 for each copyrighted

sound recording infringed, or for such other amount as may be proper pursuant to 17 U.S.C.

§ 504(c); alternatively, for Defendants' profits and Plaintiffs' damages in such amounts as may

be found or established at trial.

   2. For a preliminary and permanent injunction enjoining Defendants and all persons

acting in concert or participation with Defendants, from directly or indirectly infringing, or from

causing, contributing to, enabling, facilitating, or participating in the infringement of, any of

Plaintiffs' respective copyrights or exclusive rights under copyright (whether now in existence or

hereafter created).

3.      For Plaintiffs' costs in this action, including reasonable attorneys' fees, pursuant

to 17 U.S.C. § 505.

4.      For prejudgment interest according to law.

5.      For such other and further relief as this Court may deem just and proper.


Dated: September 7, 2006

                                        Respectfully submitted,

                                        _____
                                        Steven B. Fabrizio (SF8639)
                                        JENNER & BLOCK LLP
                                        601 Thirteenth Street, N.W.
                                        Suite 1200 South
                                        Washington, DC 20005-3823
                                        (202) 639-6000
                                        (202) 639-6066

                                        *Attorney for Plaintiffs*

12

**EXHIBIT A**

| Copyright Plaintiff | Artist | Song Title | Album Title | SR |
|---|---|---|---|---|
| Atlantic Recording Corporation | Yes | Owner of a Lonely Heart | 90125 | 50-617 |
| Elektra Entertainment Group Inc. | Eagles | Hotel California | Hotel California | N38950 |
| Capitol Records, Inc. | Beastie Boys | Intergalactic | Hello Nasty | 277-731 |
| Capitol Records, Inc. | MC Hammer | U Can't Touch This | Please Hammer, Don't Hurt 'Em | 133-683 |
| UMG Recordings, Inc. | Blink-182 | All the Small Things | Enema of the State | 279-826 |
| UMG Recordings, Inc. | Nirvana | Smells Like Teen Spirit | Nevermind | 135-335 |
| SONY BMG MUSIC ENTERTAINMENT | Marvin Gaye | Sexual Healing | Midnight Love | 41-568 |
| Arista Records LLC | Grateful Dead | Touch of Grey | In The Dark | 90-055 |
| SONY BMG MUSIC ENTERTAINMENT | Journey | Don't Stop Believin' | Escape | 30-088 |